UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

MICHAEL MATZELL, individually                              20 Civ. 9963
and on behalf of all others similarly situated,

                                         Plaintiff,        **CLASS ACTION**
        – against –                                        **COMPLAINT AND**
                                                           **JURY DEMAND**

Acting DOCCS Commissioner ANTHONY J. ANNUCCI;
Deputy DOCCS Commissioner JEFFREY MCKOY;
Superintendent BRUCE YELICH; Deputy Superintendent of
Programs STANLEY BARTON; Coordinator KAY HEADING
SMITH; Coordinator ELIZABETH LARAMAY; Coordinator
"JANE" BOYEA; and "JOHN/JANE DOES" 1-10,

                                         Defendants.
-----------------------------------------------------------------------x

                Plaintiff Michael Matzell on behalf of himself and others similarly situated, for

his Complaint, alleges as follows:

                                   **INTRODUCTION**

        1.      On July 9, 2015, Plaintiff Michael Matzell was sentenced by the

Honorable Jerome J. Richards of St. Lawrence County Court to a period of incarceration in New

York state prison, in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS").  Judge Richards also sentenced Mr. Matzell to enroll in an

early-release program administered by DOCCS which allows incarcerated people to gain early

release from prison after completing a six-month intensive boot-camp program.  This early-

release program is called the Shock Incarceration Program ("Shock").  Through Shock,

incarcerated people receive substance abuse treatment, therapy, education, and other

reintegration services.

2.      Incarcerated people who complete Shock are released from prison substantially earlier than those who do not, often years earlier.  For example, had defendants followed the orders of plaintiff's sentencing judge to enroll Mr. Matzell in Shock, Mr. Matzell would have been released from prison 506 days earlier than he was.  Instead, defendants violated the sentencing court's order and denied Mr. Matzell admission to Shock.  As a result, and only through litigation, was Mr. Matzell belatedly admitted to Shock and not released from prison until December 24, 2019.  He and the class of people he seeks to represent were incarcerated for months—and years—longer than they would have had the Shock aspect of their sentences been honored and carried out.

3.      Mr. Matzell's court-ordered sentence included Shock.  Mr. Matzell's sentence did not permit DOCCS to decide whether he qualified for Shock.  The sentencing order stemmed from the statutory scheme: as part of the 2009 Drug Law Reform Act, the New York state legislature empowered sentencing judges to impose Shock as part of a criminal sentence, and in so doing expressly eliminated DOCCS' discretionary authority to deny this category of individuals admission into the Shock program.

4.      DOCCS officials are legally bound to follow judges' sentencing orders: more than seventy-five years ago, a unanimous Supreme Court held that only the judgment of a court establishes a criminal defendant's sentence, and that the imposition of an extra-judicial sentence violates a defendant's constitutional rights.  *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.).

5.      DOCCS officials, however, lawlessly refused—and still refuse—to adhere to the legislature's requirement that they must provide Shock when a sentencing court orders it as part of a criminal defendant's sentence.

6.      In denying Mr. Matzell admission to Shock, defendants—officers and supervisors at DOCCS—acted pursuant to a policy they had—and, apparently, still have—of depriving individuals like plaintiff from Shock where defendants see fit—and regardless of what their sentencing judge ordered.  DOCCS officials have maintained an unconstitutional policy of ignoring sentencing judges' requirements to enroll incarcerated people in Shock.  Instead, they have a policy of screening and selecting which individuals they will permit to participate in Shock.  As Albany Supreme Court Justice Ceresia stated in granting Mr. Matzell's successful Article 78 Petition requiring DOCCS to enroll him in Shock: "Nothing in the Statute permits DOCCS to defy a court order."

7.      Defendants' unlawful decision to bar from Shock those individuals who are judicially sentenced to the Shock program, notwithstanding court orders requiring their enrollment, resulted in the prolonged imprisonment of plaintiff Matzell and many others like him.

8.      Plaintiff brings this action for a declaratory judgment that the class's rights were violated and for compensatory and punitive damages on behalf of himself and other similarly situated incarcerated people who DOCCS excluded from Shock despite a judicial sentence imposing Shock.

## JURISDICTION AND VENUE

9.      This action arises under the Eighth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

10.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a) and 2201.

11.      Venue is lodged in this Court pursuant to 28 U.S.C. 1391(b).

## JURY DEMAND

12.     Plaintiff demands trial by jury in this action

## THE PARTIES

13.     Plaintiff Michael Matzell is a resident of New York and a natural person.

14.     Defendant Anthony J. Annucci is Acting Commissioner of DOCCS.  At all times relevant to this action, defendant Annucci has been, and continues to be, responsible for the policy, practice, supervision, implementation, and conduct of all DOCCS matters and responsible for the appointment, training, supervision, and conduct of all DOCCS personnel.  In addition, Acting Commissioner Annucci has been and continues to be responsible for enforcing the rules of DOCCS, and for ensuring that DOCCS personnel obey the Constitution and laws of the United States.  Upon information and belief, given the high-profile of the changes wrought by the 2009 Drug Law Reform Act (as described below), Annucci (who was Executive Deputy Commissioner from 2007-2013 and has been Acting Commissioner since 2013), was involved in creating DOCCS' policy of excluding incarcerated people that were judicially sentenced to Shock.  Defendant Annucci was put on notice of this policy at the very latest by May 8, 2018, when Matzell sued Mr. Annucci in state court to challenge the denial of Mr. Matzell's admission to Shock, and yet defendant Annucci still refused to enroll Mr. Matzell in Shock notwithstanding that lawsuit.

15.     Deputy Commissioner Jeffrey McKoy was the Deputy Commissioner of Program Services for DOCCS at all relevant times.  He refused to enroll Mr. Matzell in Shock and stated, in a February 15, 2018 letter, that Mr. Matzell "does not meet the Department's disciplinary criteria to participate in the program."  He took that position even though Mr. Matzell's counsel at Prisoners' Legal Services of New York had sent a letter to defendant

McKoy on January 17, 2018, detailing, with statutory cites, that any decision to deny Mr. Matzell Shock admission would be at odds with the sentencing judge's order.

16.     Defendant Stanley Barton is the DOCCS Deputy Superintendent of Programs at Bare Hill Correctional Facility ("Bare Hill") in Malone, New York.  He refused to enroll Mr. Matzell in Shock and stated in a September 15, 2017 letter that Mr. Matzell was ineligible for Shock due to a disciplinary ticket for drug use.  On December 18, 2017, Mr. Matzell's counsel at Prisoners' Legal Services of New York sent a letter to defendant Barton (among others) explaining, in detail and with statutory cites, that there was no basis to deny Mr. Matzell admission to the Shock program.  Still, defendant Barton refused to enroll Mr. Matzell in Shock despite knowing that the sentencing Court ordered DOCCS to place Mr. Matzell in Shock.

17.     Defendant Bruce Yelich was Superintendent of Bare Hill Correctional Facility at all relevant times.  On December 18, 2017, Mr. Matzell's counsel at Prisoners' Legal Services of New York sent a letter to Yelich, Barton, and Laramay explaining, in detail and with statutory cites, that they had no basis to deny Mr. Matzell admission to the Shock program. Defendant Yelich refused to enroll Mr. Matzell in Shock and denied Mr. Matzell's formal grievance application challenging the refusal to enroll Mr. Matzell entry in Shock.  He repeatedly acted to deny Mr. Matzell enrollment in Shock despite knowing that the sentencing Court ordered DOCCS to place Matzell in Shock.

18.     Defendant Kay Heading Smith is Supervising Offender Rehabilitation Coordinator ("SORC") assigned to Bare Hill.  She refused to enroll Mr. Matzell in Shock and stated in a September 25, 2017 written message that Mr. Matzell was ineligible for Shock due to the "statutory factor" of a disciplinary ticket for drug use (there is no such statutory factor).

Defendant Smith told Mr. Matzell to "stop writing about this—the answer will not change." Defendant Smith knew that the sentencing Court ordered DOCCS to place Mr. Matzell in Shock.

19.    Defendant Elizabeth Laramay is an Offender Rehabilitation Coordinator ("ORC") at Bare Hill assigned to "Shock Review."  As an ORC she is responsible for determining incarcerated people's eligibility for Shock.  She refused to enroll Mr. Matzell in Shock because of his drug tickets, despite knowing that the sentencing Court ordered DOCCS to place Matzell in Shock.  On December 18, 2017, Mr. Matzell's counsel at Prisoners' Legal Services of New York sent a letter to defendants Yelich, Barton, and Laramay explaining, in detail and with statutory cites, that they had no basis to deny Mr. Matzell admission to the Shock program.  On January 5, 2018, Ms. Laramay performed a Shock Suitability Screening for Mr. Matzell and concluded that he was "Not Suitable."  Filling out a standard DOCCS form for Bare Hill that was last revised in June 2013, Ms. Laramary checked "Disciplinary" as the "Not Suitable" reason.  The standard form stated that the "decision is not appealable."

20.    Defendant "Jane" Boyea (first name unknown), is an ORC at Bare Hill Correctional Facility.  She refused to enroll Mr. Matzell in Shock because of his drug tickets, including in a written message dated August 25, 2017, despite acknowledging, in writing, that the sentencing court ordered DOCCS to place Mr. Matzell in Shock.

21.    At all relevant times, defendants "John/Jane Does 1-10" were training, supervisory, and policy making personnel within DOCCS who implemented, enforced, perpetuated and/or allowed the policy of excluding people judicially sentenced to Shock that is the subject of this action, acting in their capacity of agents, servants, and employees of defendants and within the scope of their employment as such.  Plaintiff is unable to determine

the names of these DOCCS supervisory defendants at this time and thus sue them under a fictitious designation.  All are sued in their individual capacities.

22.    During all times mentioned in this complaint, defendants, separately, and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiff's constitutional rights, and the privileges and immunities of the plaintiff, and while these acts were carried out under color of law, they had no justification or excuse, and were instead gratuitous, illegal, and improper.  Defendants are all being sued in their individual capacities except for defendant Annucci who (in addition to being sued in his individual capacity) is also being sued in his official capacity for declaratory relief.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this case as a class action under Fed. R. Civ. P. 23(b)(3) on behalf of all persons whose criminal sentence in New York State included a Judicial Shock Order pursuant to Penal Law § 60.04(7), but whom DOCCS nevertheless excluded or will exclude from Shock.

24.    This case is appropriate for treatment as a damages class action under Rule 23(b)(3) because common issues predominate over individual issues and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

25.    Public records requests indicate that since the Drug Law Reform Act of 2009 was passed (as detailed below), DOCCS screened out and deprived over 300 people of Shock who were court-ordered to be enrolled in Shock.  The class is so numerous that joinder is impracticable.

26.     On information and belief, joinder also is impracticable because many members of the class are incarcerated, recently incarcerated, low-income persons, may not speak English, or likely would have great difficulty in pursuing their rights individually.

27.     The questions of law and fact presented by plaintiff's claims are common to the absent Class members who plaintiff seeks to represent.  Among others, the questions of law and fact common to the Class are: (i) whether defendants excluded incarcerated people from Shock despite Court orders requiring their enrollment; (ii) whether excluding eligible incarcerated people from Shock violates due process; (iii) the degree of involvement of supervisors in DOCCS in the creation of the Shock policy; (iv) whether defendants' actions were sufficiently wanton as to warrant the imposition of punitive damages; and (v) whether defendants are immune from suit.

28.     Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

29.     The Shock policy has resulted in the wrongful detention and confinement of, and the infliction of injuries upon, plaintiff and the Class.  The claims alleged and the practices challenged in this complaint are common to all members of the Class.

30.     The violations suffered by plaintiff Matzell are typical of those suffered by the Class.  The entire Class will benefit from the relief sought.

31.     Plaintiff Matzell has no conflict of interest with Class members and will fairly and adequately protect the interests of the class.  Counsel competent and experienced in federal class actions, federal civil rights litigation, and criminal defense has been retained to represent the Class.  Emery Celli Brinckerhoff Abady Ward & Maazel LLP, a law firm with

offices in New York City, has extensive experience in civil rights litigation and as class counsel in numerous lawsuits against state and local governments.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of separate actions would be inefficient and wasteful of legal resources; (b) the members of the Class are scattered throughout New York State and are not likely to be able to vindicate and enforce their Constitutional rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against defendants which would establish incompatible standards of conduct for defendants; (f) defendants have acted on grounds applicable to all Class members, making relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the Class, especially on issues of liability predominate over any question, such as that of individual damages, that affect individual members.

33.    There will be no extraordinary difficulty in the management of the class action.

## **FACTS**

34.    The United States Constitution prohibits public officials, such as the Commissioner of the State DOCCS or any of his subordinates, from prolonging an incarcerated person's period of incarceration when the sentencing court has authorized that person's release.

35.     Defendants may not use discretionary determinations to exclude incarcerated people from Shock where the sentencing court has ordered the person to enroll in Shock.

36.     Defendants' policy, practice, and custom of excluding court-ordered Shock participants from Shock has been promulgated, effectuated, and/or enforced in bad faith and contrary to clearly established law.

37.     In 1936, a unanimous Supreme Court held that the judgment of a court establishes a defendant's sentence, and that an administrator altering that sentence violates a defendant's constitutional rights.  *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936) (Cardozo, J.).  "The only sentence known to the law is the sentence or judgment entered upon the records of the court."  *Id.* at 464.   The Second Circuit has more recently reiterated reaffirmed that "The only cognizable sentence is the one imposed by the judge. Any alteration to that sentence, unless made by a judge in a subsequent proceeding, is of no effect."  *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006).

**Court-Ordered Participation Shock Program**

38.     Shock is a six-month boot-camp style program in which incarcerated people are subject to "a highly structured routine of discipline, intensive regimentation, exercise and work therapy, together with substance abuse workshops, education, prerelease counseling, and self-improvement counseling."  7 NYCRR § 1800.2.

39.     Prior to 2009, DOCCS was afforded broad discretion and authority to screen and admit individuals to Shock or exclude them from Shock (*see* Correction Law § 867 [1]).

40.    In 2009, however, the New York State Legislature passed the Drug Law Reform Act of 2009 (L 2009, ch 56, as codified in CPL 440.46 "DLRA") to "grant relief from what the Legislature perceived as the inordinately harsh punishment for low level non-violent drug offenders that the Rockefeller Drug Laws required." *People v. Brown*, 25 N.Y.3d 247, 251 (2015) (internal quotation marks and citations omitted).

41.    The DLRA expanded judicial discretion and made it possible for *judges* to offer court-mandated treatment substance abuse treatment to certain addicted non-violent offenders, without the approval of prosecutors.[1]

42.    The 2009 DLRA amended Penal Law § 60.04 (7), to provide that a sentencing court "may issue an order directing that [DOCCS] enroll the defendant in the shock incarceration program . . . provided that the defendant is an eligible inmate, as described in [Correction Law § 865(1)]."

43.    The 2009 statutory change to allow judges to sentence people to Shock ("Judicial Shock Orders") was a significant and widely reported element of the DLRA reforms, whose overarching purpose was to create "expanded eligibility for participants in Shock."[2]

44.    Until the 2009 amendments, eligibility for Shock was determined only by DOCCS after reception at a facility, and decisions regarding placement in Shock were solely the province of DOCCS.  Judges had no authority to order an incarcerated person be placed in the

---

[1] https://www.vera.org/publications/end-of-an-era-the-impact-of-drug-law-reform-in-new-york-city.  It was widely reported and discussed in criminal justice circles in 2009 when the Rockefeller Drug Law Reforms expanded eligibility for Shock to allow for judges to sentence defendants to Shock.  "Reforms effective in April 2009 also expanded eligibility for participation in the Shock Incarceration Program and the Willard Drug Treatment Campus." Leslie Kellam and Leigh Bates, 2009 Drug Law Changes 2014 Update, Drug Law Series Report No. 5, Division of Criminal Justice Services Criminal Justice Update (May 2014).

[2] https://www.criminaljustice.ny.gov/drug-law-reform/documents/dlr-update-report-may-2014.pdf

program. DLRA made several significant changes to Shock including that sentencing judges were now authorized to order Shock placement for those eligible.

45.    The creation of the Judicial Shock Orders was intended to provide the sentencing judge with greater authority to order Shock, and return the discretionary determination of who went to Shock back to the sentencing judge, or as the New York Times Editorial page put it in February 2009, to achieve "a full restoration of judicial discretion."[3]

46.    The changes to Shock wrought by the DLRA were so significant that DOCCS itself issued an analysis to explain the new reforms, including the new tool of the Judicial Shock Order, noting: "The DLR[A] also permits the sentencing court to order DOCCS to enroll a drug defendant into the Shock Incarceration Program when the defendant meets the legal requirements."[4]

47.    In addition to the media and DOCCS itself, public defender organizations, criminal justice groups, and other stakeholders all widely discussed the impact of the newly available Judicial Shock Orders as a mechanism to cabin prosecutorial and DOCCS' discretion regarding who could participate in Shock. Judges could now sentence defendants to Shock. This was a significant development to expand Shock eligibility.[5] Individuals who were eligible for Shock pursuant to Correction Law § 865(1) who receive a Judicial Shock Order could no longer be screened out of Shock participation by a Shock Screening Committee or other DOCCS process.[6]

---

[3] https://www.nytimes.com/2009/02/09/opinion/09mon3.html

[4] https://doccs.ny.gov/system/files/documents/2019/09/DrugLawReformShock.pdf

[5] https://cdn.ymaws.com/www.nysda.org/resource/resmgr/PDF-The_Report/09-NYSDA_Report-Mar-May.pdf; https://nysba.org/NYSBA/Meetings%20Department/Section%20Meetings/Criminal%20Justice/Spring2017Book/Final%20Book%20CRIMSP17%20.pdf

[6] https://www.nycla.org/pdf/Crim%20Tri%20Adv%20Book%20(F).pdf

48.    Under Correction Law § 865(1), an "eligible inmate" is one who is eligible for release (on parole or conditional release) within three years, less than fifty years old, and who has never been connected of a violent felony.  Penal Law § 60.04 (7), further provides that "any defendant to be enrolled in such program pursuant to this subdivision shall be governed by the same rules and regulations promulgated by [DOCCS], including without limitation those rules and regulations establishing requirements for completion and . . . governing discipline and removal from the program."  Penal Law § 60.04 (7), as amended by L 2009, ch 56.

49.    Correction Law § 867(2-a) requires that "an inmate sentenced to shock incarceration shall promptly commence participation in the program."

50.    Since 2009, state prison officials may only screen incarcerated people that have been *judicially sentenced* to Shock when the prisoner has a "medical or mental health condition" that would prevent him from successfully completing the program.

51.    Even if an incarcerated person cannot participate in Shock due to a medical/mental health condition, DOCCS is still required to adhere to the court-ordered sentence.  It must provide a "alternative-to-shock-incarceration program," and if the incarcerated person objects to that alternative, notify the court to permit the court to modify its sentencing order, per Penal Law § 60.04 (7) (b).

52.    In sum, since 2009, where a sentencing court ordered DOCCS to enroll an incarcerated person in Shock as part of his or her sentence, DOCCS had no discretion or authority to screen and refuse to enroll the person unless DOCCS determined only that the person to be enrolled in Shock had a medical or mental health condition that would prevent him or her from completing the program.

53.     The New York courts have made clear that DOCCS officials unmistakably
lack the authority to deny statutorily eligible defendants from enrolling in the program, stating:
"Where a court sentences an inmate to the [Shock] program, DOCCS is limited to determining
only whether a judicially sentenced [S]hock incarceration inmate 'has a medical or mental health
condition that [would] render the inmate unable to successfully complete the . . . program.'"
*Matzell v. Annucci*, 183 A.D.3d 1, 121 N.Y.S.3d 153 (App. Div. 3d Dep't 2020) (quoting
Correction Law § 867(2-a)).

54.     The 2009 statutory amendment eliminated DOCCS' discretion to deny
enrollment in Shock in the face of a judicial sentence, yet DOCCS repeatedly persisted in
asserting its "authority" to screen and bar Mr. Matzell and the putative Class members from
admission to Shock for statutorily invalid reasons.[7]

55.     In ignoring the applicability, requirements, and limitations of Correction
Law § 867(2-a) to Mr. Matzell's sentence, defendants flouted the New York State Legislature's
express purpose of amending the law to limit DOCCS' discretion to restrict access to Shock and
expand the judiciary's ability to order enrollment in Shock as part of a sentence.  *See* L. 2009,
c.56, pt. AAA, § 2, eff. April 7, 2009 ("DLRA").

56.     DOCCS officials have made clear that what happened to the named
plaintiff is consistent with DOCCS policies in every case: "it is the Department's position that
the latter part of Penal Law § 60.04(7)(a) grants the department the authority to consider an
inmate's disciplinary record and/or infractions accrued while awaiting enrollment in the Shock
Incarceration Program in determining whether or not an inmate will in fact be enrolled in the

---

[7] Incarcerated people who are screened for enrollment in Shock and who have *not* been judicially
sentenced to enroll in the program are evaluated under different criteria, specifically whether the person's
participation would be "consistent with the safety of the community, the welfare of the applicant and the
rules and regulations of the department."  Correction Law § 867 (2).

program.  This is the case regardless of whether or not participation in the program is court

ordered."  Letter from Jarrod Sanford, Assistant Counsel at the DOCCS Office of Sentencing

Review, March 16, 2018.

57.    DOCCS has used a list of what it deemed Shock "General Confinement

Statutory Criteria" which did not comply with the statute's actual "statutory criteria."  Defendant

Annucci submitted this list to the state court in July 2018 in opposing Mr. Matzell's Article 78

Petition, and the form Annucci submitted states that it was last revised January 7, 2011.  Those

criteria state: "**<u>EXCLUDE</u>** offenses due to specific disciplinary reasons," and "**<u>EXCLUDE</u>**

offenders serving administrative segregations," among other exclusion criteria.

58.    Similarly, defendant Barton stated that DOCCS has "pre-determined"

"criteria" for entry into Shock and used those criteria to exclude plaintiff Matzell (as detailed

below): "One of those criteria is that you MUST remain free of disciplinary tickets for drug use."

DOCCS had no lawful authority to promulgate exclusion criteria for court-ordered Shock, other

than the statutory ineligibility criteria.

59.    Not only is defendants' policy unlawful, it is also illogical and cruel.

DOCCS barred Mr. Matzell from enrolling in a substance abuse treatment program because he

had abused substances while incarcerated.  By denying him access to treatment on the grounds

that he had a substance abuse problem—the very condition he was attempting to treat—DOCCS

created a nightmarish Catch-22.

60.    In flat defiance of clear constitutional and statutory commands, defendants

have promulgated, implemented, enforced, and/or failed to rectify a policy, practice, and custom

of excluding eligible incarcerated persons from a court-ordered Shock program without

authorization from the sentencing court and in excess of their express statutory authority.

61.    Upon information and belief, Prisoners Legal Services of New York is still receiving complaints from individuals who received Judicial Shock Orders that DOCCS is denying them admission to Shock on the grounds of prison misbehavior. At least one of these denials by DOCCS occurred as recently as October 2020.

62.    Each member of the Class, including plaintiff Matzell, were victims of defendants' policy or practice.

63.    As a direct result of the unlawful exclusion from court-ordered Shock, each member of the Class has suffered or will suffer actual damages in forms involving, without limitation, loss of liberty, mental anguish, and pain and suffering.

**Plaintiff Matzell**

64.    Plaintiff Michael Matzell's experience is representative of those of the putative Class.

65.    On July 9, 2015, following Mr. Matzell's conviction for criminal possession of a controlled substance in the third degree, the Honorable Jerome J. Richards of the St. Lawrence County Court sentenced Mr. Matzell to a determinate term of four years in prison followed by three years of post-release supervision to be served consecutively with the 37 months of time remaining from a previous sentence, for an aggregate maximum term of seven years, one month, and 26 days.

66.    Judge Richards also ordered Mr. Matzell to enroll in the Shock Incarceration Program pursuant to Penal Law § 60.04(7), stating in the sentence and commitment order: "SHOCK INCARCERATION Ordered [PL 60.04(7)]" (bracketed text in original).

67.    In determining Mr. Matzell's sentence, Judge Richards intended for Mr. Matzell to participate in Shock once he was time-eligible—within three years of his conditional

release date—and to be rendered automatically eligible for early conditional release upon his successful completion of Shock.  Shock was not only mandated by Judge Richards, it was also a critical opportunity for Mr. Matzell to obtain therapeutic and rehabilitative services after struggling with substance abuse, and to reenter society with improved skills.

68.     On July 16, 2015, Mr. Matzell entered DOCCS custody to begin serving his sentence.

69.     Mr. Matzell tried to engage in whatever programming he could during his incarceration.  Mr. Matzell worked as a dorm porter at several facilities.  At Bare Hill Correctional Facility, Mr. Matzell also worked in tech support and earned multiple skill certifications from Microsoft through a pilot program with DOCCS.

70.     As Mr. Matzell pursued a maximally productive life in prison, he was working to overcome his substance abuse problem.

71.     During his incarceration, Mr. Matzell received several Tier 3 disciplinary tickets for substance abuse related infractions.

72.     In January 2018, Mr. Matzell became time-eligible to enroll in Shock after serving two and a half years of his sentence.  When Mr. Matzell attempted to satisfy the terms of his sentence and initiate the Shock enrollment process, however, multiple DOCCS officials denied him admission to the program, based solely on several disciplinary "tickets" relating to substance abuse that he had received during his incarceration.

73.     Mr. Matzell was seeking to enroll in Shock to comply with his judicial sentence.  As such, DOCCS was without discretion or authority to screen him and deny him admission to Shock for all but the limited statutory grounds of medical or mental health issues, neither of which applied to him when he became eligible to enroll.

74.    During his period of incarceration, Mr. Matzell had no medical or mental health conditions that would prevent him from successfully completing Shock.

75.    DOCCS officials never told Mr. Matzell that he was ineligible for Shock on the basis of a medical or mental health condition as defined in Correction Law § 867(2-a).

76.    As Mr. Matzell neared his Shock enrollment eligibility date of January 18, 2018,[8] he contacted his DOCCS ORC to inquire about his anticipated enrollment in Shock.

77.    On August 25, 2017, ORC Boyea denied Mr. Matzell admission to Shock due to the drug-related disciplinary infractions he had received during his incarceration, stating, "You are court ordered [to Shock]; however, your drug tickets will exclude you."

78.    ORC Boyea did not identify any medical or mental health condition that prevented Mr. Matzell from enrolling in Shock.

79.    In essence, Mr. Matzell's assigned rehabilitation coordinator informed Mr. Matzell that, even though he was incarcerated for a drug offense and consequently expressly ordered by the court to undergo this rehabilitative Shock program as part of a lawfully and duly-imposed sentence, DOCCS would assert authority and discretion to exclude him on the basis of his drug-related prison disciplinary dispositions from the very rehabilitative program he needed.

80.    Not only was ORC Boyea's response statutorily unauthorized, it was also illogical—one should not deny treatment to a person dealing with substance abuse simply because he shows evidence of that substance abuse problem.

81.    Mr. Matzell next contacted the Deputy Superintendent of Programs ("DSP") at Bare Hill Correctional Facility to inquire about his anticipated admission into Shock.

---

[8] Per Correction Law § 865, an otherwise eligible incarcerated person may enroll in Shock once he becomes eligible for conditional release within three years.  Because Mr. Matzell was sentenced to four years plus the balance of his sentence from a prior conviction, his earliest conditional release date was January 18, 2021—setting his earliest eligibility date for Shock at January 18, 2018.

82.     On September 15, 2017, DSP Barton denied Mr. Matzell admission to Shock, stating, "[t]he criteria for review is pre-determined, as with all programs within NYSDOCCS.  One of those criteria is that you MUST remain free of disciplinary tickets for drug use.  Your 10/31/15 Tier 3 misbehavior report for Drug Use makes you ineligible to be considered for the program.  I trust this again explains why you are not eligible for [S]hock."

83.     DSP Barton did not identify any legal authority for this denial, nor did he cite any medical or mental health condition that could prevent Mr. Matzell from enrolling in Shock, the only reason that would have been statutorily permissible.

84.     On September 25, 2017, SORC Smith wrote to Mr. Matzell stating "[t]he statutory factor that eliminates you from [S]hock is your poor disciplinary.  Specifically, the 6/10/16 – Tier 3 – Drug Possession & 10/31/15 – Tier 3 – Drug Use . . . You will be 'officially' reviewed for shock when you are within 3 years of your ERD [Earliest Release Date] 1/18/21; [S]hock review approx. on 1/18/18."

85.     SORC Smith did not identify any medical or mental health condition that could prevent Mr. Matzell from enrolling in Shock.

86.     SORC Smith, as a rehabilitation coordinator, should have been particularly aware of the needs of incarcerated people seeking rehabilitation and recognized the need of Mr. Matzell specifically to undergo rehabilitation, particularly in light of his conviction and judicial sentence, yet SORC Smith chose to continue to bar Mr. Matzell from Shock.

87.     On December 15, 2017, Jeffrey McKoy, DOCCS Deputy Commissioner for Program Services, wrote to Mr. Matzell stating, "You have been reviewed for participation in shock and it has been determined you do not meet the suitability criteria for participation due to

your time to earliest release . . . You are encouraged to participate in all recommended programs and to maintain an acceptable record of behavior."

88.     Deputy Commissioner McKoy did not identify any medical or mental health condition that could prevent Mr. Matzell from enrolling in Shock.

89.     On December 18, 2017, Mr. Matzell's counsel sent a letter on Mr. Matzell's behalf to Bruce Yelich, Superintendent of Bare Hill, identifying the statutory grounds that required Mr. Matzell's admission to Shock absent a disqualifying medical or mental health condition.

90.     On January 5, 2018, ORC Laramay performed a Shock Suitability Screening for Mr. Matzell and concluded that he was "Not Suitable" for "Disciplinary" reasons. The standard DOCCS form in which this was recorded stated that the "decision is not appealable."

91.     On January 18, 2018, Mr. Matzell became time-eligible for Shock.

92.     On February 15, 2018, Mr. Matzell's counsel received a reply from Deputy Commissioner McKoy stating that "[i]nmate Matzell has been screened for participation in Shock and he does not meet the Department's disciplinary criteria to participate in the program. Information confirming this decision can be found in Correction Law 865."

93.     Mr. McKoy did not identify any medical or mental health condition that could prevent Mr. Matzell from enrolling in Shock.

94.     On February 27, 2018, Mr. Matzell's counsel sent a letter to DOCCS Deputy Commissioner and Counsel Kevin Bruen articulating the statutory bases that mandated Mr. Matzell's admission to Shock and asking for a clear statement of the Department's position

and legal basis for excluding Mr. Matzell on account of alleged drug-related disciplinary infractions.

95.    DOCCS caused Mr. Matzell real and significant damage.  Mr. Matzell was deprived of both needed drug treatment and his rightful opportunity to earn early conditional release upon his successful completion of the program.

96.    Lacking any other options, Mr. Matzell was forced to seek judicial relief through the Article 78 process.

97.    On May 8, 2018, having exhausted his administrative avenues of relief within DOCCS, Mr. Matzell commenced an Article 78 proceeding against Commissioner Annucci challenging DOCCS' erroneous determination that he was ineligible for and could be excluded from Shock.

98.    On March 7, 2019, over a year after Mr. Matzell should have been enrolled in Shock, the Honorable Justice Andrew G. Ceresia of the Albany Supreme Court issued an Order and Judgment in favor of Mr. Matzell, stating "the controlling statutes do not permit DOCCS to administratively bar an inmate from entering the shock program when shock has been judicially ordered.  To do so constitutes an administrative alteration of a sentence, which is not permitted."

99.    Justice Ceresia rejected DOCCS' position that it "still retains discretion to bar even judicially-sentenced shock inmates from participation in the program."[9]

---

[9] Specifically, Justice Ceresia rejected DOCCS' interpretation of Penal Law § 60.04(7)(a).  DOCCS argued that the phrase "to be enrolled" as found in Penal Law § 60.04(7)(a) refers to incarcerated persons who have yet to begin Shock, allowing DOCCS to apply its own rules and regulations to preclude those individuals from enrolling in Shock.  Justice Ceresia disagreed, stating that, "[t]he full sentence [in this section] refers to any defendant who is 'to be enrolled' in shock because a court has already *ordered* DOCCS to do so" (emphasis in original).

100.    Justice Ceresia held that Annucci was under a "clear statutory mandate" to enroll Mr. Matzell in Shock, and that "[n]othing in the statute permits DOCCS to defy a court order."

101.    Justice Ceresia instructed defendant Annucci to enroll Mr. Matzell in Shock within 30 days of the entry of its Order and Judgment, provided that Mr. Matzell was not statutorily ineligible pursuant to Correction Law § 865(1) or § 867(2-a).

102.    The Supreme Court Appellate Division Third Department, on May 31, 2019, granted Mr. Matzell's motion and vacated the automatic stay of Justice Ceresia's decision. Later, the Third Department affirmed the Supreme Court's decision.

103.    Following the Supreme Court's decision and the Appellate Division's May 31, 2019 Order vacating the automatic stay pending appeal, DOCCS officials specifically determined that Mr. Matzell suffered from no disqualifying medical or mental condition, pursuant to Correction Law § 867(2-a).

104.    On June 7, 2019, Mr. Matzell finally was allowed to enroll in Shock, 506 days after his initial date of enrollment eligibility back on January 18, 2018.

105.    On December 24, 2019, after a brief medical delay related to a minor injury he sustained while completing physical exercises at Shock, Mr. Matzell successfully satisfied the requirements of Shock.[10]

106.    Upon his completion of Shock, Mr. Matzell was immediately and automatically granted early conditional release.

_____

[10] Mr. Matzell sustained an injury during one of the physical exercise components of Shock, which caused him to be medically disqualified from participating in Shock under Correction Law § 867(2-a).  He was then admitted to an alternative-to-Shock program to complete the remainder of time owed to Shock, again under Correction Law §867(2-a).  Mr. Matzell was able to satisfy the requirements of Shock by completing the alternative program.

107.    Mr. Matzell was released from DOCCS custody on December 24, 2019.

108.    Since earning his early conditional release on December 24, 2019, Mr. Matzell has made significant strides in integrating back into his community.

109.    Mr. Matzell is focused on giving back to the community: he is studying to become a Peer Recovery Coach, working with a local prevention council, and preparing to pursue a bachelor's degree in addiction psychology.

110.    Mr. Matzell is doing what he can to help members of the community who are in recovery, including undergoing NARCAN training and attending appointments alongside people in recovery.

111.    Mr. Matzell is also enjoying living with his family and being able to spend quality time with them.

112.    By delaying his admission to Shock with their baseless rejection, defendants confined Mr. Matzell for 506 days beyond his prescribed period of incarceration.

113.    As a direct and proximate result of defendants' unlawful exclusion of Mr. Matzell from Shock and the unlawful period of imprisonment as a result, Mr. Matzell has suffered and continues to suffer loss of liberty, loss of wages, psychological pain, suffering, and mental anguish.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983; Fourteenth Amendment

114.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

115.    By implementing, promulgating, and enforcing and/or effectuating a policy, practice, and custom pursuant to which the named plaintiff and other members of the plaintiff Class were or will excluded from Shock despite being court ordered to enroll in Shock,

where such exclusion is not based on compliance with the statute's delineated process for screening incarcerated persons from Shock, defendants have deprived plaintiff and members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment of the United States Constitution.  Defendants also conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and/or failed to prevent one another from doing so.

116.    Defendants acted under pretense and color of state law and within the scope of their employment.

117.    Defendants acted beyond the scope of their jurisdiction, without authority of law, and abused their powers.

118.    Defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff and members of the plaintiff Class of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourteenth Amendment to the United States Constitution.

119.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff and members of the plaintiff Class suffered and continue to suffer the damages hereinbefore alleged.

**<u>SECOND CAUSE OF ACTION</u>**
42 U.S.C. § 1983; Eighth Amendment

120.    Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

121.    By implementing, promulgating, and enforcing and/or effectuating a policy, practice, and custom pursuant to which the named plaintiff and other members of the plaintiff Class were or will excluded from Shock despite being court ordered to enroll in Shock,

where such exclusion is not based on compliance with the statute's delineated process for screening incarcerated persons from Shock, and having the effect of unlawfully keeping them in custody beyond the date they are or were entitled to be released, defendants have imposed cruel and unusual punishment upon the named plaintiff and members of the plaintiff Class, in violation of 42 U.S.C. § 1983, in violation of the Eighth Amendment of the United States Constitution. Defendants also conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and/or failed to prevent one another from doing so.

122.    Defendants acted under pretense and color of state law and within the scope of their employment.

123.    Defendants acted beyond the scope of their jurisdiction, without authority of law, and abused their powers.

124.    Defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff and members of the plaintiff Class of their constitutional rights secured by 42 U.S.C. § 1983, and by the Eighth Amendment to the United States Constitution.

125.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff and members of the plaintiff Class suffered and continue to suffer the damages hereinbefore alleged.

## **RELIEF REQUESTED**

WHEREFORE, plaintiff and members of the putative Class request the following relief:

1.    A judgment declaring that defendants have committed the violations of law alleged in this action;

2.    Compensatory damages against all defendants in an amount to be proven

at trial;

3.    Punitive damages against all defendants in an amount to be proven at trial;

4.    An order awarding disbursements, costs, and attorneys' fees; and

5.    Such other and further relief that may be just and proper.


Dated: November 25, 2020
        New York, New York

EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP


By:    /s/ Katherine Rosenfeld
        Katherine Rosenfeld
        Debra L. Greenberger
        Vivake Prasad*

600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

krosenfeld@ecbawm.com
dgreenberger@ecbawm.com
vprasad@ecbawm.com

*Attorneys for Plaintiff*


*Admitted in New York. Application for
Admission to Southern District of New York forthcoming.